# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| MATTHEW JOHNSON | CIVIL ACTION NO. 16-1240 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TRANS UNION, LLC and DEFENSE FINANCE AND ACCOUNTING SERVICE | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a renewed motion to dismiss, or alternatively, a motion for relief from a prior order of the Court, filed by the only remaining Defendant, Defense Finance and Accounting Service ("DFAS"). See Record Document 48. For the second time, DFAS seeks to dismiss the claims of Plaintiff Matthew Johnson ("Johnson") due to an alleged lack of subject matter jurisdiction based upon sovereign immunity. Both Johnson's opposition to the motion to dismiss and DFAS's reply in support of its motion have been submitted [Record Documents 53 & 55], and therefore the matter is ripe for review. Upon due consideration of the briefing and the available jurisprudence, and for the following reasons, DFAS's motion is **GRANTED**.

## FACTUAL BACKGROUND

The Court reiterates the facts as set forth in its prior opinion:

> According to Johnson's complaint, he was a member of the Texas National Guard in 2007. He was scheduled to attend drill in August 2007. The August drill was cancelled, and Johnson attended drill in November 2007 instead. DFAS, a federal agency, paid Johnson for the August drill he did not attend, but did not pay him for the November drill that he did attend.

1

> Therefore, Johnson was ultimately paid the correct amount for the number of drills he attended.
>
> In 2014, Johnson received a letter from DFAS seeking reimbursement of the payment for the August 2007 drill he did not attend. Johnson has repeatedly sought to explain the circumstances to DFAS, that is, that he was not overpaid at all. Nonetheless, DFAS reported the debt to Trans Union, Experian, and Equifax, all of which are credit reporting agencies. The debt was noted as a "derogatory, charged off debt." In October 2015, Johnson disputed Trans Union's inclusion of the debt on his credit report, thus requiring Trans Union to perform a reasonable investigation of the dispute under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. Johnson then brought suit under the FCRA, alleging that both Trans Union and DFAS violated multiple provisions of that Act which require reasonable investigations be conducted into both the debt and the dispute. As a result of the alleged failure to comply with the FCRA, coupled with the fact that the debt has remained on his credit report, Johnson seeks damages under the FCRA.

Record Document 27.

DFAS, a federal government agency within the Department of Defense, previously moved to dismiss Johnson's claims, arguing that the Court lacks subject matter jurisdiction because the United States has not waived sovereign immunity for FCRA claims. The Court initially disagreed with that position and denied DFAS's motion. Upon further consideration of the matter, the Court finds that sovereign immunity has not been unequivocally waived as required, and therefore holds the United States may not be sued for a violation of the FCRA.

## **LAW AND ANALYSIS**

I.  <u>Federal Rule of Civil Procedure 12(b)(1)</u>.

Motions filed pursuant to Federal Rule of Civil Procedure 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. "Lack of

subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. See id. In reviewing a Rule 12(b)(1) motion to dismiss, "the district court is empowered to consider matters of fact which may be in dispute." Id. "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." Id.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n, Inc. v. City of Madison, Miss., 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996)). If sovereign immunity is not expressly waived under the FCRA, this Court is deprived of subject matter jurisdiction over Johnson's claims against DFAS. See Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (holding that the absence of a waiver of sovereign immunity is a jurisdictional defect). Because a defect in subject matter jurisdiction may be raised at any time, even on appeal, Giles v. NYLCare Health Plans, Inc., 172 F.3d 332, 336 (5th Cir. 1999), this Court is free to examine the issue now even though it previously rendered an opinion on the matter.

II. Sovereign Immunity.

"In order to hale the federal government into a court proceeding, a plaintiff must show that there has been a valid waiver of sovereign immunity." Wagstaff, 509 F.3d at 663 (quoting Lewis v. Hunt, 492 F.3d 565, 570 (5th Cir. 2007)). "Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" United States v. Bormes, 568 U.S. 6, 9-10 (2012) (quoting United States v. Nordic Village, Inc., 503 U.S. 30, 33–34 (1992)). A waiver of sovereign immunity will not be implied; rather, it must be unequivocally expressed in statutory text. Wagstaff, 509 F.3d at 664. A waiver is strictly construed in favor of the sovereign. Id. In other words, if there is a countervailing, plausible interpretation of the statute under which suit or recovery would not be permitted against the United States, then the statute must be deemed ambiguous; and an ambiguity, by logical extension, cannot lead to a finding of a waiver. See FAA v. Cooper, 566 U.S. 284, 290-91 (2012). Without a waiver of sovereign immunity, "the federal government is immune from suit." Id.

III. The FCRA.

Johnson sued DFAS under the FCRA, which imposes liability on any person who willfully or negligently fails to comply with the Act's requirements. 15 U.S.C. §§ 1681n(a), 1681o(a). The term "person" is defined as "any individual, partnership, corporation, trust, estate, cooperative, association, *government or governmental subdivision or agency*, or other entity." 15 U.S.C. § 1681a(b) (emphasis added). The question presented to this

Court is whether the inclusion of "government" and/or "governmental subdivision or agency" constitutes an unequivocal waiver of sovereign immunity for the United States.

Previously, this Court held that the statute's explicit use of the term "government" and "governmental . . . agency" provided a sound basis for finding a waiver of sovereign immunity even though Congress did not specifically authorize suit or recovery against "the United States." When this Court issued its prior opinion, the Fifth Circuit had not been confronted with this issue.[1] Indeed, only one appellate court had actually addressed this question, and that court decided that the FCRA did waive sovereign immunity. In <u>Bormes v. United States</u>, 759 F.3d 793, 795 (7th Cir. 2014), the Seventh Circuit succinctly stated that "[t]he United States is a government. One would suppose that the end of the inquiry. By authorizing monetary relief against *every* kind of government, the United States has waived its sovereign immunity. And so we conclude." As <u>Bormes</u> explained, "what § 1681a(b) does is waive sovereign immunity for all requirements and remedies that another section authorizes against any 'person.' Congress need not add 'we really mean it!' to make statutes effectual." <u>Bormes</u>, 759 F.3d at 796. Further, with regard to the potential consequences caused by exposure under the Act, "[i]f the interaction of § 1681a(b) and § 1681n(a)(2) creates excessive liability—which it won't if federal officers obey the statute—then the solution is an amendment, not judicial rewriting of a pellucid definitional clause." <u>Id.</u> Persuaded by <u>Bormes</u>, this Court followed suit in holding the FCRA waived sovereign immunity.

---

[1] To date, the Fifth Circuit still has not had occasion to address the Government's sovereign immunity in the context of the FCRA.

At the time the Court rendered its opinion, there was no consensus among district courts or the appellate courts, nor is there today. Courts interpreting the same statutory provisions have reached and continue to reach contrary conclusions. This Court's opinion coincided not only with the Seventh Circuit in Bormes, but also other district courts within the Fifth Circuit, as well as district courts in the Sixth, Tenth, and Eleventh Circuits. Those opinions have not been overturned. However, since then, the Seventh Circuit has arguably retreated from the stance it took in Bormes. Indeed, in Meyers v. Oneida Tribe of Indians of Wis., 836 F.3d 818 (7th Cir. 2016), the court was faced with deciding whether the FCRA waived sovereign immunity against tribal governments. Offering little meaningful explanation, the court refused to extend Bormes, instead holding that the FCRA did not waive sovereign immunity for Indian tribes, even though Indian tribes are governments. See Meyers, 836 F.3d at 826-27.

In the wake of Bormes and Meyers, both the Fourth and Ninth Circuits have issued opinions finding that the FCRA does not unequivocally waive sovereign immunity. See Robinson v. United States Dep't of Educ., 917 F.3d 799 (4th Cir. 2019) and Daniel v. Nat'l Park Serv., 891 F.3d 762 (9th Cir. 2018). One of the observations made by those courts is the extent of ambiguity within the FCRA itself. That is, while certain FCRA provisions could certainly appear to include the United States and could be construed as a waiver of sovereign immunity, other provisions cast doubt on Congress's intent, thus leading to the inevitable conclusion that a waiver cannot be borne from ambiguity. It is the holistic approach taken by these courts in examining the FCRA, and the exploration of inconsistent

internal provisions and/or sweeping consequences that could result from enforcement, that lead this Court to agree that Congress "legislate[d] on a sensitive topic inadvertently or without due deliberation." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 139 (2005).

A holistic review of the FCRA is consistent with the Supreme Court's admonition that "oftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" King v. Burwell, 135 S. Ct. 2480, 2489 (2015) (quoting FDA v. Brown & Williamson, 529 U.S. 120, 132 (2000)). A determination of whether statutory language is plain and clear requires a review of the words "in their context and with a view to their place in the overall statutory scheme." Id. (quoting Brown & Williamson, 529 U.S. at 133). Here, the Court's overarching duty is not to construe isolated provisions but rather a complete statute. Id. (citing Graham Cty. Soil and Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)).

The Court begins with the consideration that in Bormes, the United States conceded that it was a person for purposes of the Act's substantive requirements; its argument was only as to whether damages were available against it. Clearly, those advocating on behalf of the United States since Bormes have changed tack and no longer make such a powerful concession. Nonetheless, there is not much dispute in the jurisprudence that within the FCRA, Congress's definition of the term person is broad. In large part, it was this broad definition that prompted this Court to follow Bormes's path in finding that the term person, which includes government, also included the United States government. Both the Fourth

internal provisions and/or sweeping consequences that could result from enforcement, that lead this Court to agree that Congress "legislate[d] on a sensitive topic inadvertently or without due deliberation." Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 139 (2005).

A holistic review of the FCRA is consistent with the Supreme Court's admonition that "oftentimes the 'meaning—or ambiguity—of certain words or phrases may only become evident when placed in context.'" King v. Burwell, 135 S. Ct. 2480, 2489 (2015) (quoting FDA v. Brown & Williamson, 529 U.S. 120, 132 (2000)). A determination of whether statutory language is plain and clear requires a review of the words "in their context and with a view to their place in the overall statutory scheme." Id. (quoting Brown & Williamson, 529 U.S. at 133). Here, the Court's overarching duty is not to construe isolated provisions but rather a complete statute. Id. (citing Graham Cty. Soil and Water Conservation Dist. v. United States ex rel. Wilson, 559 U.S. 280, 290 (2010)).

The Court begins with the consideration that in Bormes, the United States conceded that it was a person for purposes of the Act's substantive requirements; its argument was only as to whether damages were available against it. Clearly, those advocating on behalf of the United States since Bormes have changed tack and no longer make such a powerful concession. Nonetheless, there is not much dispute in the jurisprudence that within the FCRA, Congress's definition of the term person is broad. In large part, it was this broad definition that prompted this Court to follow Bormes's path in finding that the term person, which includes government, also included the United States government. Both the Fourth

and Ninth Circuits recognized the broad definition of person, but those courts declined to base their conclusions upon that isolated definition, as the term person was not being interpreted on "a blank slate. 'There is a longstanding interpretive presumption that person does not include the sovereign,'" even though the term person includes government within its definition. Robinson, 917 F.3d at 802 (quoting Vt. Agency of Nat. Res. v. U.S. ex rel Stevens, 529 U.S. 765, 780 (2000)). Robinson explained that "the United States is not ordinarily considered to be a person." Id. Similarly, Daniel instructed that reading the term person to mean the United States throughout the entire FCRA would lead to implausible and awkward results, which alone demonstrates Congress did not intend the United States to be subject to all of the statute's provisions. Daniel, 891 F.3d at 770. These implausible and awkward possibilities included criminal penalties against the United States, as well as authorization for United States agencies and state governments to investigate and sue the United States for damages.[2] The Ninth Circuit "doubt[ed] that Congress meant to build a novel enforcement regime without doing so explicitly." Id. at 771.

Furthermore, under the broader reading of the term person, punitive damages would be available against the United States. Typically, it is presumed that Congress does not intend to authorize the recovery of punitive damages from the United States. DFAS noted this very principle in support of its motion to dismiss, contending that Congress would not have intended to open the United States up to the possibility of far-reaching

---

[2] Essentially, as Daniel observed, the United States could sue itself under the FCRA and then collect damages *from itself*, which makes little sense.

punitive damages upon a violation of the statute.[3]  DFAS also recognized, however, that Congress did, in fact, authorize punitive damages against the United States within a certain subsection of the FCRA.  So, as the Daniel court summarized, insofar as statutory interpretation goes, the analysis of punitive damages "cuts both ways." Daniel, 891 F.3d at 772 n.6.  Significantly, though, it does reveal that Congress knew how to explicitly include the "United States" when it wanted to.  Knowing that Congress specifically included the United States when it so intended creates ambiguity about whether it really meant for the terms person and government to also include the United States within their meaning.

That some of the interpretations of the statutory language and intent cut both ways is ultimately dispositive of the question before the Court.  It reveals that there are varying plausible interpretations of the statute.  In light of that conclusion, this Court can no longer "say with perfect confidence that Congress meant to abrogate" sovereign immunity. Daniel, 891 F.3d at 774.  Since "imperfect confidence will not suffice," Dellmuth v. Muth, 491 U.S. 223, 231 (1989), this Court must find that sovereign immunity has not been waived.  As such, Johnson cannot maintain his suit against DFAS.

---

[3] As the Robinson court aptly pointed out, "it remains the province of the political branches, not the courts, to weigh the costs and benefits of exposing the federal government to civil litigation." Robinson, 917 F.3d at 801.  This very notion caused this Court to reject DFAS's cries about the unintended and grievous consequences that may result from a waiver of sovereign immunity. It is not this Court's duty to rewrite the statutory text to countermand the far reaches of a statute's penalty provisions.  This Court's duty is to interpret the text as written.

## **CONCLUSION**

For the foregoing reasons, the Court concludes that the FCRA does not contain a clear, unequivocal, and unambiguous waiver of sovereign immunity. Accordingly, this Court lacks subject matter jurisdiction over Johnson's claims against DFAS. DFAS's motion to dismiss [Record Document 48] be and is hereby **GRANTED**, and Johnson's claims are **DISMISSED WITHOUT PREJUDICE**.

A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** on this _15th_ day of July, 2019.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT COURT